UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 16-0180 (ESH) |
| BRYNEE BAYLOR, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Brynee Baylor has filed a second emergency motion for release from custody, arguing that the Bureau of Prisons ("BOP") "is simply unequipped and unprepared to provide her the necessary medical care her conditions demand," and that these conditions "make her especially susceptible to the [COVID-19] virus and are life-threatening should she contract the virus." (*See* Second Mot. for Release at 1, ECF No. 176.).  The government argues that, even if Baylor has met her burden to show an "extraordinary and compelling reason" warranting her release, *see* 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors under 18 U.S.C. § 3553(a) do not justify her release.  (*See* Gov't Surreply, ECF No. 188.)  For the following reasons, the Court denies Baylor's motion without prejudice.

### BACKGROUND

Baylor was convicted following a jury trial of one count of conspiracy to commit federal securities fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b), 78ff(a); one count of federal securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff(a); and five counts of fraud in the first degree in violation of 22 D.C.C. §§ 3221(a), 3222(a), and 1805.  (*See* Judgment at 1-2, ECF No. 154.)  Following her conviction, she pled guilty to one count of willfully failing to file

a tax return and pay tax, in violation of 26 U.S.C. § 7203.  (*See id.* at 2; *see also* Plea Agreement, ECF No. 130.)  On September 12, 2019, the Court sentenced Baylor to twenty-five months of incarceration and thirty-six months of supervised release, as well as a special assessment of $725 and restitution of $2,210,716.00.  (*See* Judgment at 3-4, 7.)  She self-surrendered to FPC Alderson, in Alderson, West Virginia, on January 17, 2020, and has served approximately a quarter of her sentence.  According to BOP records, she is projected for release on October 26, 2021.  (*See* App. A to Gov't Opp., ECF No. 179-1.)

Baylor's first emergency motion for release, filed on March 23, 2020, was denied due to her failure to exhaust her administrative remedies.  (*See* Order, ECF No. 175.)  However, on March 16, 2020, Baylor wrote a request to the warden at FPC Alderson, which was denied.  (*See* Second Mot. at 2.)  Baylor filed the instant motion on May 19, 2020.

## ANALYSIS

### I.     LEGAL STANDARD

18 U.S.C. § 3582(c) provides, in relevant part, that—

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
>  (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

This section represents an expansion of the original regime of compassionate release, which only allowed courts to hear motions brought by the Director of the Bureau of Prisons ("BOP"). As amended by the First Step Act of 2018, the section now permits a *defendant* to move for compassionate release on her own behalf. See Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release"). However, before coming to court the statute requires that a defendant either exhaust her administrative remedies within the BOP or wait thirty days after submitting a request to the BOP that it file a motion on her behalf. For a Court to grant a motion for compassionate release (made by either the BOP or a defendant), it must find "extraordinary and compelling reasons" to reduce a defendant's sentence.[1] Furthermore, even if a Court concludes that a defendant has presented such reasons, it must also "consider[] the factors set forth in section 3553(a)." See 18 U.S.C. § 3582(c)(1)(A).

As noted above, on March 16, 2020, Baylor made a request to the warden of FPC Alderson that a motion for compassionate release be made on her behalf. Since more than 30 days have passed since that request was made, the Court considers her motion on the merits.

## II.  MOTION FOR RELEASE

Baylor argues that due to her "focal segmental glomerulosclerosis (FSGS) a chronic kidney disease (CKD)," and "elevated blood pressure readings," she is at a high risk of becoming seriously ill should she contract COVID-19. (*See* Second Mot. at 2, 3.) Due to this risk, she argues that she has demonstrated an "extraordinary and compelling reason" warranting a reduction in her sentence under 18 U.S.C. § 3582(c)(1)(A).

---

[1] Section 3582(c)(1)(A) also provides that if a defendant is at least 70 years old and has served a certain number of years in prison, her sentence may be reduced. *See* 18 U.S.C. 3582(c)(1)(A)(ii). However, as Baylor is only 46, that subsection is not relevant, and the Court need only consider whether there exist "extraordinary and compelling reasons."

The commentary to Section 1B1.13 of the United States Sentencing Guidelines ("USSG") defines "extraordinary and compelling reasons" as including: (1) certain medical conditions; (2) the age of the defendant; (3) family circumstances of the defendant; and (4) reasons "other than, or in combination with, the reasons described" in the three previous subsections. Medical conditions warranting a reduction in sentence include both terminal illnesses and also other chronic conditions that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at Application Note 1(A)(i)-(ii). The "extraordinary and compelling reason," whatever it may be, "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *See id.* at Application Note 2. Regardless of whether the Court considers Section 1B1.13 and its commentary binding or merely helpful in light of the passage of the First Step Act,[2] "[t]he court is in a unique position to determine whether the circumstances warrant a reduction" of a defendant's sentence. *See id.* at Application Note 4.

---

[2] Section 1B1.13 only references "motion[s] of the Director of the Bureau of Prisons" when describing what constitutes an "extraordinary and compelling reason," as it has not been amended since the First Step Act of 2018 provided an avenue for defendants to make their own motions. In that way it is "anachronistic," *United States v. Asaro*, 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020) (internal quotation marks omitted), as it has not been changed since Congress "further increase[d] the use of compassionate release and . . . explicitly allow[ed] courts to grant such motions even when [the BOP] finds they are not appropriate." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019) (emphasis in original), several courts have concluded that while the current policy statement may be helpful, "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" under the regime created by the First Step Act. *Beck*, 425 F. Supp. 3d at 579.

The Court obtained Baylor's medical records when she filed her renewed motion, including the records of a visit to a nephrologist in Beckley, West Virginia. Thereafter the Court requested updated blood tests and blood pressure readings. In response to the Court's request, the parties submitted blood pressure tests for March, April, and June, as well as results for lab tests conducted on June 2, 2020. The parties disagree about the severity of Baylor's kidney condition, with the government's nephrologist stating that her renal function is "near normal," while Baylor's doctor argues that it is "moderately to severely decreased." (*Compare* Gov't Surreply at 2 *with* Def.'s Reply at 5, ECF No. 183.) Nevertheless, according to tests administered by the BOP, Baylor's creatinine levels have consistently risen since she arrived at FPC Alderson to a level that indicates some decrease in kidney function. The parties also disagree over the severity of Baylor's hypertension—records released by the BOP state that, after adjustment of her medication, Baylor's blood pressure "has fallen within normal limits" (*see* Gov't Surreply at 4), but Baylor's doctor argues that the BOP's readings are largely unhelpful. (*See* Def.'s Reply at 7.)

Pursuant to Department of Justice Guidance from May 2020, the government now concludes that "under present circumstances, an inmate's diagnosis with a medical condition that the [Centers for Disease Control and Prevention ('CDC')] has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover," qualifies as an "extraordinary and compelling reason" warranting a sentence reduction. (*See* Gov't Surreply at 5 (internal quotation marks omitted).) The CDC's most recently updated list of high-risk conditions, as of June 25, 2020, concludes that "chronic kidney disease of any stage increases [an individual's] risk for severe illness from COVID-19," while hypertension "*may* increase [an individual's] risk of severe illness from COVID-19." *See* Centers for Disease Control and

Prevention, *People of Any Age With Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 7, 2020) (emphasis added).  Because Baylor has a chronic kidney disease, she argues that she is at an elevated risk should she contract COVID-19, and the government agrees.

While the Court recognizes these risks, the Court is also mindful that as of July 6, 2020, there were *no* cases of COVID-19 at FPC Alderson.  *See* Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last accessed July 7, 2020).  And, many courts considering motions for compassionate release from prisoners facing an elevated risk of serious illness but housed at a facility with no COVID-19 cases have concluded that such situations do not present an "extraordinary and compelling reason" for release.  *See, e.g., United States v. Demirtas*, 2020 WL 3489475, at *3 (D.D.C. Jun. 25, 2020); *United States v. Okpalobi*, 2020 WL 3429939, at *3 (E.D.L.A. Jun. 23, 2020); *United States v. Shabudin*, 2020 WL 2464751, at *2 (N.D. Cal. May 12, 2020); *United States v. Hylander*, 2020 WL 1915950, at *2 (S.D. Fl. Apr. 20, 2020).  Moreover, in several cases where courts granted a compassionate release motion on COVID-19 grounds in the absence of any cases at the facility where the inmate was housed, they were dealing with inmates who were much older and sicker than Baylor.  *See Demirtas*, 2020 WL 3489475, at *3 (collecting cases).  In the alternative, the decisions were dealing with facilities located in places where a lack of cases likely represented a widespread lack of testing, *see, e.g., Sanford v. United States*, 2020 WL 3488752, at *4 (E.D. Mich. June 26, 2020), which is not something Baylor suggests is happening at FPC Alderson.  Indeed, unlike *Sanford*, where the district court noted the prevalence of the virus in the county in which the prison was located, the counties in which FPC Alderson is located—Monroe and Summers—have between them only 18

cases in total.  *See* West Virginia Dep't of Health & Human Resources, Coronavirus Disease 2019, https://dhhr.wv.gov/COVID-19/Pages/default.aspx (last accessed July 7, 2020).

In making this decision, the Court does not suggest that it "should stand by until such time as [Baylor] becomes infected." (Second Mot. at 11.)  As Judge Moss recognized in *Demirtas*, "if circumstances at [FPC Alderson] change or if [Baylor's] health deteriorates, [she] may renew [her] request for compassionate release."  2020 WL 3489475, at *3.  In the meantime, however, the BOP is making extra efforts to manage Baylor's condition (*see* Gov't Surreply at 3 ("Doctor Wright offered to arrange an expedited nephrology consultation for the defendant . . . .")), and the lack of cases in the facility suggest that she is not at this time in a situation where her "ability . . . to provide self-care within the environment of a correctional facility" is "*substantially* diminish[ed]."³  *See* U.S.S.G. § 1B.13 at Application Note 1(A) (emphasis added).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that her motion is **DENIED** without prejudice.



ELLEN S. HUVELLE
United States District Judge

Date: July 7, 2020

---

³ Because the Court has concluded that, in light of the circumstances at FPC Alderson, Baylor has not demonstrated an "extraordinary and compelling reason" warranting a reduction in her sentence, it need not decide whether the factors under 18 U.S.C. § 3553(a) justify her release.